# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES PAVATT, | ) |
|                Plaintiff, | ) |
| and | ) |
| | ) |
| JEFFREY D. MATTHEWS, and | ) |
| JOHN DAVID DUTY | ) |
|                Intervenor Plaintiffs, | ) |
| v. | )    **Case No. CIV-10-141-F** |
| | ) |
| (1) JUSTIN JONES, in his capacity as Director | ) |
| of the Oklahoma Department of Corrections; | ) |
| (2) RANDALL WORKMAN, in his capacity as | ) |
| Warden of the Oklahoma State Penitentiary, | ) |
| | ) |
|                Defendants. | ) |

## **DEFENDANTS' TRIAL BRIEF**

Defendants, Jones and Workman submit the following trial brief for the Court's consideration.

**I.      Factual Background.**

Intervenor Matthews and Duty's claims have now become the ninth and tenth in a continuing series of challenges to the constitutionality of Oklahoma's lethal injection policy. *See Anderson v. Jones*, No. CIV-05-825-F (W.D. Okla. filed July 20, 2005); *Boltz v. Jones*, No. CIV-06-587-F (W.D. Okla. filed May 30, 2006); *Patton v. Jones*, No. CIV-06-591-F (W.D. Okla. filed May 31, 2006); *Hamilton v. Jones*, CIV-06-1193-F (W.D. Okla. filed Oct. 27, 2006); *Bland v. Jones*, No. CIV-07-695-M (W.D. Okla. filed June 21, 2007); *Short v. Jones*, CIV-08-339-F (W.D. Okla. filed April 2, 2008); *Pavatt v. Jones*, CIV-10-141-F (W.D.

Okla. filed March 16, 2010); and *Wackerly v. Jones*, CIV-10-1161-F (W.D. Okla. filed Sept. 21, 2010).[1]

John Duty was serving a sentence of life imprisonment for the felony crime of Robbery or Attempted Robbery in Case No. CF-70-75 from the Jackson County District Court, State of Oklahoma, and sentences of life imprisonment for the felony crimes of First Degree Rape and Shooting with Intent to Kill in Case Nos. CF-78-12 and CF-78-13 from the Tillman County District Court, State of Oklahoma. *Duty v. State*, 2004 OK CR. 20, ¶ 17, 89 P.3d 1158, 1162.

While in prison on December 19, 2001, Duty enticed his cellmate, Curtis Wise, into acting as a hostage so Duty could be moved from the Disciplinary Unit to Administrative Segregation. *Duty v. State*, 2004 OK CR. 20, ¶ 8, 89 P.3d 1158, 1161. After Wise permitted Duty to tie Wise's hands behind his back, Duty strangled Wise to death. *Id.* Duty stated Wise struggled for his life and that it took a while. *Id.* Duty was adamant that he would kill again. *Duty v. State*, 2004 OK CR. 20, ¶ 12, 89 P.3d 1158, 1161. "Duty finds death a better option than being locked up for the rest of his life." *Duty v. State*, 2004 OK CR. 20, ¶ 4, 89 P.3d 1158, 1160.

The facts relevant to Matthews' convictions are thoroughly discussed in *Matthews v. State*, 1998 OK CR 3, ¶¶ 2-5, 953 P.2d 336, 339-340. *Matthews v. State*, 2002 OK CR 16,

---

[1] The Court is requested to take judicial notice of its previous rulings in this series of cases. *See* Fed. R. Evid. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").

¶ 2, 45 P.3d 907, 911. Early in the morning of January 27, 1994, Minnie Short was attacked in her living room by someone with a knife who cut her throat. Someone else shot her husband Earl Short in the back of the head. Tracy Dyer subsequently stated he and Matthews went to the Shorts' house to look for money. He blamed Matthews for Earl Short's murder and the attack on Minnie Short. After Matthews' arrest, property including firearms belonging to the Shorts was found in Matthews' home and/or buried in the field behind his home. Matthews was convicted of First Degree Murder, Assault and Battery with a Deadly Weapon and Conspiracy to Commit a Felony in McClain County District Court Case No. CF-94-18.

Matthews' execution has been stayed by this Court until November 19, 2010, however he does not currently have an execution date. Duty's execution is scheduled for December 16, 2010. Both Mathews and Duty will be executed under Oklahoma's current lethal injection protocol, OSP-040301-01, adopted October 21, 2010. Because of the unavailability of U.S. manufactured sodium thiopental, ODOC's protocol was amended to allow for the use of an alternative barbiturate as the first drug to be administered. The new protocol allows for the use of either sodium thiopental or pentobarbital as the first drug. Although there is a continuing effort to obtain sodium thiopental, ODOC does not currently possess any sodium thiopental. Consequently, it is anticipated both Matthews and Duty will be executed using pentobarbital as the first drug. Matthews and Duty challenge the use of this drug, both as to

the adequacy of the amount to be administered and as to the length of time that must elapse before the second drug is administered.

The Intervenors argue, in essence, that they will be unnecessarily subjected to the risk of substantial pain from exposure to the second and third drugs, due to not being adequately anesthetized from the first drug. Intervenors have no evidence that the use of pentobarbital will result in a substantial risk of pain; rather, the sole argument upon which they rely is that there is no data or literature supporting the use of pentobarbital as an anesthetic, and similarly no data supporting the use of 5 grams as a dose that will render an inmate incapable of experiencing the effects of the second or third drugs. Because it is axiomatic by now that the substantial risk of pain in any three-drug lethal injection protocol stems from the effects caused by the second and third drugs, the Court need only find sufficient evidence that a 5 gram dose of pentobarbital administered intravenously will render the inmate incapable of experiencing the effects of the other two drugs.

**II.    Legal Claims.**

Defendants' defense to Intervenors' claims that Oklahoma's lethal injection protocol is unconstitutional because it is either deficient or is not being followed is firmly rooted in *Baze v. Rees*, 553 U.S. 35 (2008).

    1.    Application of *Baze* opinion

According to the plurality opinion in *Baze*, "to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents

prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id*. at 50(*quoting Farmer v. Brennan*, 511 U.S. 825, 842, 846, and n.9 (1994)). Intervenors do not attack the lethal injection protocol itself other than its provision for pentobarbital as a substitute for sodium thiopental.[2] They have also asserted inconsistencies in the manner in which executions were carried out in the past under prior protocols, and assert vague unknowns as their evidence that the protocol will not be carried out as planned. But, "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Id*. Moreover, given the Eighth Amendment standard, "a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Id*. at 51. Intervenors may argue that sodium thiopental is a slightly or marginally safer alternative to pentobarbital, but as noted by the Supreme Court, even if this were true it would not matter.

*Baze* stands for the proposition that Kentucky's protocol, on its face, did not present a substantial risk of serious harm, and any protocol substantially similar to Kentucky's

---

[2] Nor could they, as this Court has on more than one occasion recognized that the manner in which the protocol is carried out has been repeatedly upheld by the district court and by the Tenth Circuit Court of Appeals. *See Wackerly v. Jones*, No. 10-6237, 2010 WL 3965929, (10th Cir. Oct. 12, 2010), * 1; *Duty v. Workman*, No. 07-7073, 2010 WL 533117, * 11 (10th Cir. Feb. 12, 2010) (*citing Hamilton v. Jones*, 472 F.3d 814, 816-17 (10th Cir. 2007)4).

protocol, without more, would survive the plurality opinion. *Jackson*, 594 F.3d at 223 n.16 (citing "for ample support" *Harbison v. Little*, 571 F.3d 531, 536 (6th Cir. 2009).

This Court has previously stated, in *Short v. Jones,* that "[t]he concerns that were articulated and dealt with in *Baze v. Rees* are adequately met by the provisions of the Oklahoma protocol as it now exists." The new protocol is substantially the same as the version that was upheld in prior cases. Other than the change allowing for a second barbiturate, the new protocol adds additional safeguard not present in the previous versions, by requiring the physician present to wait a *minimum* of five minutes between administration of the pentobarbital and the neuromuscular blocker. Furthermore, this minimum elapsed time requirement is not the only safety measure - the physician must then determine that the inmate is unconscious before the second drug is administered. Compared with Kentucky, where the warden was the person making the determination of consciousness, Oklahoma's protocol is not only more stringent, but is much safer.

Moreover, Intervenors have no evidence which would substantiate a claim that the use of pentobarbital in the quantity specified by Oklahoma's protocol and the duration of time provided by the protocol between the administration of the pentobarbital and the second drug do not pass constitutional muster. Instead, Matthews admits that as barbiturates, both sodium thiopental and pentobarbital are central nervous system depressants and that a sufficient quantity of each will cause both unconsciousness and death in a person. Matthews agrees that a 5 gram dose of both sodium thiopental and pentobarbital will cause unconsciousness,

but believes that for pentobarbital, it could depend on the "manner and timing of administration." While this is not elaborated on, experts for both parties agree that an intravenous administration of pentobarbital would be more potent and would require a smaller dose to achieve the same effects than if it were administered either orally or intramuscularly. Matthews also admits that even though barbiturates are used during physician-assisted suicide and that pentobarbital is used to cause death in animals, he is "unable to admit or deny" whether a 5 gram quantity of pentobarbital will cause the death of a person.

      2.    <u>Failure to exhaust administrative remedies</u>.

Defendants also contend that neither Intervenor is entitled to relief as a result of his failure to exhaust his administrative remedies. Defendants rely on 42 U.S.C. § 1997e(a), which provides that a prisoner is required to exhaust his administrative remedies prior to filing a lawsuit on each claim he asserts. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). No unexhausted claim may be considered in court. *Jones v. Bock*, 549 U.S. 199, 211(2007). The prison system's procedural requirements themselves determine whether a grievance or grievance paperwork was properly submitted. *Jones*, 127 S.Ct. at 923. Any claim which was not properly exhausted in full compliance with the grievance process and is procedurally barred should be dismissed with prejudice. *See Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006).

Defendants will present evidence that each Intervenor failed to fully exhaust his specific claims regarding the use of pentobarbital through ODOC's grievance process.

## III.  Potential issues at the hearing.

Due to the extremely condensed time frame in which this case has proceeded, strict compliance with the federal rules of civil procedure and with the local rules of this Court may not have been achieved in every instance. Nonetheless, Defendants are not planning on asserting any challenges or objections related to any such violation of the rules and Defendants have not been made aware of any challenges contemplated by the Plaintiff. There are, however, a variety of instances where Intervenors have not complied with at least the spirit and intent of the rules of discovery. Which, if any, of these may present the need for objections at the time of the hearing, cannot be determined at this point.

2. <u>Intervenor's expert</u>.

In his expert report, Intervenor's expert devotes a great deal of emphasis on the manner in which the protocol is carried out and compares Oklahoma's executions using sodium thiopental under previous protocols with the protocols of California and Ohio. As noted earlier, the manner in which Oklahoma's protocol is carried out has been challenged time an again, and has been upheld. Thus, any criticism by Intervenor's expert of the manner in which the new protocol is carried out should not be considered. In fact, of three listed examples of why Oklahoma's new protocol puts an inmate at serious risk of pain and suffering, only one is associated with the use of pentobarbital; the other two criticize the implementation of the protocol. Federal Rule 702 provides an expert may testify "in the form

of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts in the case." The information provided in the report of Dr. Waisel merely notes the *absence of data* - he does not render an opinion that pentobarbital *will not* work as intended. Thus, there are no principles and scientific methods that he applied in rendering an opinion that pentobarbital will not work as intended or will subject an inmate to a risk of pain. He is not a pharmacologist and has not performed any research on the use of pentobarbital and he does not use pentobarbital (unlike Defendants' expert) in his practice. His opinion does not meet the threshold requirements of Federal Rules for Expert Witnesses. The report does not set forth any scientific opinion or in any way assist the trier of fact. It does no more than speculate that pentobarbital will not work, only because he has not seen a study on its use as intended; but otherwise the offers no true opinion or scientific basis for any opinion.

Respectfully submitted,

s/ Stephen J. Krise
**STEPHEN J. KRISE, OBA # 17948**
**MARTHA R. KULMACZ, OBA # 5137**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 N. E. 21st Street
Oklahoma City, Oklahoma  73105
Tele: (405) 521-3921  Fax: (405) 521-4518
Stephen.Krise@oag.ok.gov
Martha.Kulmacz@oag.ok.gov
*Attorneys for Defendants Jones and Workman*

## CERTIFICATE OF SERVICE

I certify that on November 12, 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Robert R. Nigh, Jr.
Brewster & Deanglelis
rnigh@brewsterlaw.com

Patti Palmer Ghezzi
Sarah M. Jernigan
Assistant Federal Public Defenders
patti_ghezzi@fd.org
sarah_jernigan@fd.org
*Attorneys for Plaintiff*

Randy Bauman
Robert S. Jackson
Timothy R. Payne
Assistant Federal Public Defenders
randy_bauman@fd.org
bob_jackson@fd.org
tim_payne@fd.org
*Attorneys for Intervenor Matthews*

Thomas K. Lee
Assistant Public Defender
ken_lee@fd.org
*Attorney for Intervenor Duty*

                                      s/ Stephen J. Krise
                                      Stephen J. Krise